USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/15/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
:
PRECISION CASTPARTS CORP., et al.,                               :
:
Plaintiffs,        :
:                    20-cv-3029 (LJL)
-v-                                   :
:                    OPINION AND ORDER
SCHULTZ HOLDING GMBH & CO. KG, et al.,                           :
:
Defendants.        :
:
------------------------------------------------------------------X

      Petitioners Precision Castparts Corp. and PCC Germany Holdings GmbH (together "Petitioners") move to confirm an arbitration award pursuant to Section 207 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 207, and the 1958 Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the "New York Convention"). Respondents Schultz Holding GmbH & Co. KG, Schultz Extruded Products Beteiligungs GmbH & Co. KG, and Schultz Extruded Products Verwaltungs GmbH (together, "Respondents") oppose that motion. Respondents cross-move to vacate or modify the Award pursuant to Section 10(a) of the FAA, 9 U.S.C. § 10(a)(4). For the following reasons, the Award is confirmed, and Respondents' motion to vacate is denied.

## BACKGROUND

### A. Factual Background

      The underlying dispute giving rise to the Award concerns the purchase of a business pursuant to a Securities Purchase Agreement between Petitioners and Respondents.

In February 2017, Petitioners acquired from Respondents companies with manufacturing facilities in the United States and Germany for a price of €800,000,000.[1]  After the sale closed, Petitioners discovered that, prior to the acquisition, Respondents had manipulated financial documents of the acquired companies to show that they were "high margin" and "high cash flow" businesses.  In fact, the acquired companies were "functionally insolvent."  Dkt. No. 1-1 ("Award") ¶¶ 189–190.

Petitioners' acquisition of the companies was effected by a Securities Purchase Agreement dated December 28, 2016 and amended on February 14, 2017.  *See* Dkt. No. 1-3 ("SPA").  Article 10.9 of the SPA provides that "[a]ny controversy or claim arising out of or relating to [the SPA], or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules."  SPA § 10.9.

B. Arbitration

On March 5, 2018, Petitioners instituted an arbitration (the "Arbitration") before the American Arbitration Association, International Centre for Dispute Resolution ("ICDR"), alleging claims for fraudulent inducement and breach of warranty.  The Arbitration was held in New York City from June 24, 2019 through July 1, 2019 and on October 16, 2019.  On April 9, 2020, a three-arbitrator panel appointed by the ICDR (the "Tribunal" or "Panel") issued the Award in favor of Petitioners.  *See* Dkt. No. 1-1.  The Tribunal held that Respondents "fraudulently induced Plaintiffs to purchase [the acquired companies] to [Petitioners'] substantial detriment."  Award ¶ 161.  The Tribunal also held that Respondents breached the representations and warranties of the SPA.  *Id.* ¶ 162.  The parties agreed, and the Tribunal noted, that damages

---

[1] The Court's account of the underlying facts of this case is drawn from the parties' pleadings, their submissions in support of and in opposition to the instant motions, and the arbitration award that is the subject of the motions.

for the breach-of-contract claims were subject to an indemnity cap of €100,000,000.  *Id.* ¶ 244; *see* SPA § 7.1(d)(iii)(D) ("No Seller shall have any liability with respect to the payment of Losses to which the Purchaser Indemnified Parties would be entitled to the extent such Losses exceed . . . €100,000,000.").  The Tribunal awarded damages of €643,000,000 for Petitioners' fraudulent inducement claim, plus simple interest at the rate of 3.75% per annum from February 16, 2017 until full payment of the Award, as well as additional awards for costs and fees.  *Id.* at 295–99.  The Tribunal also held that Respondents were liable to Petitioners in the amount of €100,000,000 for the breach of contract, the maximum amount permitted under the SPA, but found that "[t]hese damages are subsumed within the [€643,000,000 award for fraudulent inducement] and are not in addition to those amounts."  *Id.* ¶ 296.

Petitioners filed the instant Petition to Confirm the Arbitration Award on April 14, 2020. Dkt. No. 1.  On April 28, 2020, Respondents moved to vacate.  Dkt. No. 10.

## LEGAL STANDARD

Pursuant to Section 207 of the FAA, "[t]he court shall confirm [an arbitration] award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention."  9 U.S.C. § 207.  Section 10 of the FAA establishes the four circumstances in which a court may vacate an arbitral award.  The fourth prong, under which Respondents move, provides for vacatur "(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. §10(a)(4).  "In addition, [the Second Circuit] has 'held that the court may set aside an arbitration award if it was rendered in manifest disregard of the law.'"  *Zurich Am. Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 589 (2d Cir. 2016) (quoting *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451 (2d Cir. 2011)).

Under these standards, "vacatur of arbitral awards is extremely rare." *Hamerslough v. Hipple*, 2012 WL 5290318, at *3 (S.D.N.Y. Oct. 25, 2012).  In reviewing an arbitration award under Section 10(a)(4), a court must determine "whether the arbitrator[] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[] correctly decided the issue."  *Jock v. Sterling Jewelers Inc.*, 942 F.3d 617, 622 (2d Cir. 2019) (internal quotation marks and citation omitted).  Thus, "[t]he Supreme Court has interpreted Section 10(a)(4) as requiring that 'an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits.'" *Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013).

Vacatur under the manifest disregard standard is limited to "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent."  *Id*. (quoting *T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc*., 592 F.3d 329, 339 (2d Cir. 2010) (internal quotations omitted)).  A court may vacate an arbitral award based on manifest disregard only upon a finding that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly appliable to the case."  *Zurich Am. Ins. Co*, 811 F.3d at 589.  The test has sometimes been described in three parts, as requiring a demonstration that (1) "the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators"; (2) "the law was in fact improperly applied, leading to an erroneous outcome;" and (3) "the arbitrator must have known of [the law's] existence, and its applicability to the problem before him."  *T.Co Metals*, 592 F.3d at 339 (internal quotation marks and citation omitted).

Ultimately, the Court must grant the Panel significant deference. *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003) (manifest disregard is "a doctrine of last resort"). Indeed, "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law." *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) (citations and quotations omitted). Rather, an award should be confirmed if there is a colorable justification for the outcome reached. *Id.*

## DISCUSSION

The parties do not dispute the Tribunal's findings of fact as to the underlying claims. Rather, Respondents claim that Delaware law, which governed the SPA, *see* SPA § 10.8, requires dismissal of any fraudulent inducement claim that is not pleaded "separate and apart" from a breach-of-contract claim. *See* Dkt. No. 11 at 2 (citing *Yu v. GSM Nation, LLC*, 2018 WL 2272708, at *16 (Del. Super. Ct. Apr. 24, 2018)). In particular, Respondents argue that the Panel disregarded a Delaware law principle known as the "rehash doctrine," which prohibits pleading damages for fraud that are identical to damages sought for a breach-of-contract claim. *Id* at 12–13.

Under Delaware law, two doctrines, the rehash doctrine and another doctrine known as "bootstrapping," prevent plaintiffs from bringing claims sounding in fraud that merely restate identical claims otherwise brought sounding in breach of contract. Respondents submit, and no one disputes, that while the bootstrapping and rehash doctrines both limit the permissibility of simultaneously asserting fraud and breach-of-contract claims, the bootstrapping doctrine requires that the claims be based on separate and distinct conduct, while the rehash doctrine requires a plaintiff to plead separate damages for each claim. *See* Dkt. No. 11 at 16–17 (quoting Respondents' Rejoinder Brief at Arbitration, Dkt. No. 12, Ex. B ¶ 281); *see also EZLinks Golf,*

*LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017) (Under the rehash doctrine, "[e]ven if one were to assume that [plaintiff's] [fraud and breach-of-contract] claims are distinct, it still must plead separate damages.  Failure to plead separate damages is an independent ground for dismissal.").  The Tribunal recognized the distinction between the bootstrapping and rehash doctrines, and noted that they create different, independent bases for dismissing a claim for fraud: "While the bootstrapping doctrine is directed at the liability portion of contract and fraud allegations, the rehash doctrine . . . covers the damages portion of contract and fraud allegations . . . [Respondents] maintain that the fraud claim should be dismissed for the independent reason that it rehashes Claimants' damages allegation for breach of contract."  Award ¶ 245 (citations and internal quotations omitted).  Respondents argue that the Tribunal acted beyond its legal authority and in manifest disregard of Delaware law by sustaining Petitioners' fraudulent inducement claim when, Respondents submit, Petitioners sought identical damages under their breach-of-contract claim.

      **A.  The Tribunal Did Not Manifestly Disregard Delaware Law**

      As stated above, the Court may vacate an award on the basis of manifest disregard of the law only if it finds that the Tribunal knowingly misapplied a law that was clear and explicitly applicable, leading to an erroneous outcome.  *See T.Co Metals*, 592 F.3d at 339; *see also STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 79 (2d Cir. 2011) (to establish manifest disregard, Respondents "must first point to law that is well defined, explicit, and clearly applicable to the case") (internal quotation marks and citation omitted).  The Court can make no such determination here.  The Tribunal did not knowingly misapply the law; indeed, there is strong basis to believe that it did not misapply the law at all.

The Tribunal extensively considered Respondents' bootstrapping and rehashing arguments in 16 paragraphs of the Award. *See* Award ¶¶ 245–260. The Tribunal acknowledged that the rehash doctrine was "recognized in Delaware law" as a defense to a claim of fraudulent inducement and "preclude[d] maintenance of a fraud claim where the damages allegations for both claims are essentially the same." *Id*. ¶ 245. It observed that both the rehash and bootstrapping doctrines are "intended to prevent taking contract breach and damages allegations and dressing them up as a fraud claim for the same damages where the contract and fraud allegations are materially identical." *Id*. ¶ 247; *see id*. ¶ 251 ("[T]he rehash doctrine, . . . like the bootstrapping doctrine, is intended to bar a plaintiff's damages claim that is for all intents and purposes materially identical to that plaintiff's breach of contract damages claim.").

In rejecting Respondents' argument that the claim was bootstrapped—a conclusion not disputed in Respondents' instant motion—the Tribunal found that Petitioners' fraud claim was not identical to, but "broader than the breach claim." *Id*. ¶ 249. Although the claims overlap, the Tribunal found, Respondents' fraudulent misconduct went well beyond breaches of the SPA. *Id*. ("Apart from information subject to the representations and warranties [in the SPA], Respondents withheld key information that would have put the inflated financial statements in a different light if disclosed . . . and provided false information with respect to its customers, its outstanding bids, and the operations at [the Acquired Companies]." *Id*. The broader and different nature of the conduct pleaded to support the fraudulent inducement claims, combined with the additional pleading of intent, which is an element of fraud but not contract breach, was enough to defeat Respondents' bootstrapping argument. *Id*. ¶¶ 249–250.

Turning to Respondents' rehashing argument, the Tribunal determined that the damages for Petitioners' breach-of-contract and fraud claims were materially different. Petitioners'

contract breach claim was limited by the €100,000,000 contractual indemnity cap for breaches of the representations and warranties in the contract, whereas Petitioners were entitled on their fraud claim to any damages caused by Respondents' misconduct without regard to any contractual cap.  *See id*. ¶¶ 253–260.  The Tribunal's determination reflects at a minimum a reasonable application of the relevant caselaw: as the Tribunal explained, where an indemnity cap that was itself fraudulently induced prevents the injured party from recovering some or all of its damages in contract, that cap itself cannot be interposed to prevent the injured party from recovering its damages in fraud.  *See, e.g. Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1036 (Del. Ch. 2006) ("[P]ublic policy will not permit a contractual provision to limit the remedy of the buyer to a capped damage claim.") (discussed further *infra*).

    Respondents fail to cite a case that is "explicitly applicable" to the matter before the Tribunal and that would lead to an opposite result.  Respondents rely on two cases, *EZLinks Golf, LLC v. PCMS Datafit, Inc.*, 2017 WL 1312209 and *Yu v. GSM Nation, LLC*, 2018 WL 2272708, that they claim "clearly state the controlling law applicable to the arbitration."  Dkt. No. 11 at 12.  But those cases merely state the general proposition that fraud damages cannot rehash contract damages.  Neither case addresses the circumstances the Tribunal confronted here.  In both *EZLink* and *Yu*, the actual damages plaintiffs suffered and were entitled to recover were identical under the breach-of-contract and fraud counts; the only difference was a remedy— punitive damages—that was available for the fraud claim but not for the contract claim.  *See EZLinks*, 2017 WL 1312209, at *6–7; *Yu*, 2018 WL 2272708, at *16.  *EZLinks* held that the mere inclusion of punitive damages does not suffice to differentiate the fraud claim for purposes of the rehash doctrine.  2017 WL 1312209, at *6.  *Yu* reached the same conclusion, citing to *EZLinks*. 2018 WL 2272708, at *16.  Neither case involved a fraudulently induced cap that limited the

contract damages, much less one that capped the recovery at a level that, if applied, would deprive Petitioners of the ability to recover hundreds of millions of dollars caused by the conduct of Respondents, as Petitioners proved here. *See* Award ¶ 161. In this case, Petitioners sought €800,000,000 and, in the alternative, €643,000,000 for fraudulent inducement, and €100,000,000 for breach of contract. *See* Award ¶ 86. Respondents have therefore failed to meet their burden to establish that rehashing doctrine is "well defined, explicit, and clearly applicable to the case," *STMicroelectronics, N.V.*, 648 F.3d at 79. *See Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 209 (2d Cir. 2002) ("As a general matter, if the cases that establish a particular legal principle are factually distinguishable in a material respect from the case at bar, then that principle is not 'well-defined, explicit, and clearly applicable.'") (citation omitted).

Indeed, the record shows that the Tribunal determined, on reasonable grounds, that the balance of the caselaw requires the opposite result. In *JCM Innovation Corp v. FL Acquisition Hldgs., Inc.*, 2016 WL 5793192, at *9 (Del. Super. Ct. Sept. 30, 2016), the Delaware court declined to dismiss a fraud claim under the rehash doctrine where the plaintiff's breach-of-contract claims were prohibited by an exclusive remedy clause that barred the plaintiff's breach-of-contract claims entirely. *Id*. at *7. Although *JCM* is not on all fours with the Tribunal's decision, it is consistent with it. It could be said there, as Respondents say here, that the fraud claim rehashed the contract breach claim. In both instances, a plaintiff sought damages for misrepresentations that allegedly breached a contract and amounted to fraud. Yet, because the bar on the plaintiff's contract claim was itself fraudulently induced, the Court permitted the fraud claim to proceed. *See Id.* The *EZLinks* court did not disagree with that proposition. After noting that the *JCM* plaintiff alleged identical damages calculations for both the fraud and breach-of-contract claims, *id.* at *7, it cited favorably the *JCM* holding that where "the Agreement is the

'instrument by which Defendants perpetrated its broader scheme' to defraud JCM, . . . JCM's fraud claim is different from its breach of contract claim" and thus not barred by the rehash doctrine. *EZLinks*, 2017 WL 1312209, at *7 n.80 (quoting *JCM*, 2016 WL 5793192, at *9 (quoting *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010))). Although a complete bar to a breach-of-contract claim is different from an indemnity cap on damages, the Tribunal here thus reasonably concluded that "*JCM* impliedly lends support to the notion that a cap on damages can take a plaintiff outside the ambit of the rehash doctrine." Award ¶ 256.

Moreover, the proposition that the Tribunal relied upon appears to be well-supported in Delaware law. In *Abry Partners V, L.P. v. F & W Acquisition LLC*, the Delaware Chancery Court permitted a buyer in a stock purchase agreement to pursue the equitable remedy of recission under a claim of fraud even though the agreement at issue made a capped indemnity claim the exclusive remedy for misrepresentations of fact within the agreement. 891 A.2d 1032, 1035 (Del. Ch. 2006). The Court held that "public policy will not permit a contractual provision to limit the remedy of the buyer to a capped damage claim. Rather, the buyer is free to press a claim for rescission or for full compensatory damages." *Id*. at 1036. Although *Arby* did not formally implicate the rehash doctrine because there was no breach-of-contract claim, its reasoning squarely supports the Tribunal's decision. As the Delaware Superior Court later and recently described it, in declining to dismiss a fraud claim where contract breach claims were contractually capped, "*Abry* supports the conclusion that a contractual limitation on damages opens the door to parallel breach of contract and fraud claims." *Firmenich Inc. v. Natural*

*Flavors*, Inc., 2020 WL 1816191, at *10 (Apr. 7, 2020), *request for interlocutory rev. den.*, 2020 WL 2193285 (Del. Super. Ct. May 6, 2020).[2]

In support of their claim that Petitioners pled identical damages as to both the breach-of-contract and fraudulent inducement claims, Respondents argue that Petitioners conceded that the damages claims were identical by addressing damages for both claims in the same section of their Post-Hearing Brief, Dkt. No. 11 at 13, and that the Tribunal itself did not "separate, differentiate, or otherwise distinguish Buyers' alleged damages between their breach and fraud claims," *id*. at 14. Respondents further argue that by stating that the €100,000,000 award for breach damages was "subsumed within" the €643,000,000 award for fraud, the Tribunal confirmed that the damages were identical. *Id*. at 14–15.

These arguments misread the key distinction that Petitioners made and the Tribunal recognized between the damages sought and awarded for Petitioners' contract breach and fraud claims and do not establish manifest disregard of the law. Petitioners sought a minimum of €643,000,000 in out-of-pocket damages on the fraud claim, and an indemnification of €100,000,000 on the contract claim.[3] The Panel recognized this distinction and the reason for it: the breach-of-contract claim is are limited by a contractual cap while the latter encompass all of the damages Petitioners incurred as a result of being fraudulently induced to enter into the contract (with the limit) in the first place. The two are not identical. Petitioners spent substantial sums of money for a contract that they proved at arbitration was fraudulently induced. As the

---

[2] Respondents make much of the fact that Petitioners pled the same *type* of damages—out-of-pocket damages—under both their fraud and contract breach counts. *See* Dkt. No. 11 at 21–23. The *Firmenich* plaintiff did plead rescissory damages under its fraud claim and not under its breach claim, but in rejecting a rehashing argument, the court concluded that "[i]t does not appear to the Court to matter whether the difference in damages is based on the actual method of calculation, or whether the difference in actual recoverable damages constitutes a legal distinction. The Court finds that the fraud and contract claims alleged in this case may proceed in a parallel manner." 2020 WL 1816191, at *10.

[3] Petitioners subsequently conceded nothing with respect to this distinction. Respondents' argument that Petitioners did so in their brief is baseless.

Panel observed, it would be unjust to prevent Petitioners from recovering those sums on the pretense that they were bound by a contractual cap that was fraudulently procured in the first place.

Respondents further argue that the Tribunal applied the wrong legal standard to Respondents' rehashing theory when it stated the following:

> As we have noted above, this is not a case sounding in contract that tacks on pro forma allegations of "intent" or fraud." *This is a case of true and pervasive fraud*, where the active participants did not inadvertently stumble into mistakes, but rather took *systematic steps to mislead* Claimants and then to try to cover their trail. *In that circumstance, application of the rehash doctrine* to dismiss a fraud claim *must be approached with circumspection.*

Award ¶ 254 (emphasis added). Respondents contend that the language "true and pervasive fraud . . . [including] systemic steps to mislead" is not relevant to the rehashing doctrine, but only to bootstrapping, as it addresses the alleged conduct giving rise to liability, not the damages sought. Dkt. No. 11 at 16; *see also EZLinks*, 2017 WL 1312209, at *6 (Del. Super. Ct. Mar. 13, 2017) (applying the rehash doctrine as requiring that "[e]ven if one were to assume that [plaintiff's] [fraud and breach-of-contract] claims are distinct, it still must plead separate damages" and holding that "[f]ailure to plead separate damages is an independent ground for dismissal"). On this ground, Respondents argue that the Panel acted beyond its legal mandate when it asserted—without citation to Delaware law—that upon such a finding of "true and pervasive fraud," "application of the rehash doctrine to dismiss a fraud claim must be approached with circumspection." Dkt. No. 11 at 17 (quoting Award ¶ 254).

This argument likewise fails to establish error, much less manifest disregard. An arbitral panel should always apply legal principles with circumspection, carefully and prudently, whatever consequence they might have and however much money is at stake. The Court does not read the comment, in context, to suggest that the Tribunal here bent the law in a way that

unfairly benefitted Petitioners.  The Tribunal itself distinguished and addressed separately the bootstrapping and rehash doctrines.  Its conclusion did not depend on any improper or unfounded circumspection in its application of the rehash doctrine.  If anything, the Tribunal's remarks reflect the principle in Delaware law and stated by Respondents in their post-hearing briefing that "'bootstrapping' and 'rehashing' []are both premised upon Delaware courts' distaste of commercial parties masquerading contract claims as tort claims or tort claims as contract claims[.]"  Award ¶ 246 (citing Respondents' post-hearing opening brief (citing *Kushaim v. Tullow Inc.*, 132 A.2d 35, 59 (Del. Ch. 2015) and *Prairie Capital III, L.P. v. Double E. Holding Corp.*, 2016 WL 3594752, at *5–7 (Del. Super. Ct. June 27, 2016))).  The Tribunal found that Petitioners' claims were plainly *not* so masquerading, either in respect of the allegations of liability or in respect of the damages sought.

In sum, Respondents have failed to show that the arbitration panel manifestly disregarded the law.  The Tribunal's reasoning is sound and easily satisfies the requirement that it provide a colorable justification to avoid a finding of manifest disregard on a motion to vacate.  *Wallace*, 378 F.3d at 190.

B.  The Panel Did Not Exceed Its Powers

Respondents have also failed to establish that the Tribunal exceeded its power under Section 10(a)(4) of the FAA.  Section 10.9 of the SPA provides:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof."

SPA § 10.9.  Petitioners' fraudulent inducement and breach-of-contract claims both arose from the acquisition that was the subject of the SPA.  Under the SPA, therefore, both claims are properly subject to arbitration.  Respondents do not dispute this, and in fact implicitly concede it

in arguing that the fraud claim must be dismissed because the damages pleadings under the fraud and breach counts are identical. *See* Dkt. No. 11 at 22 ("Buyers had at least sixteen possible options to plead fraud and breach damages and twelve [] of those would *not* require dismissal of their fraud claims.") (emphasis original). The SPA authorized arbitration of fraud claims such as that brought by Petitioners. For that reason, the Award must not be vacated under Section 10(a)(4). *See Jock*, 942 F.3d at 622 (proper inquiry under Section 10(a)(4) is "whether the arbitrator[] had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrator[] correctly decided the issue"); *Westerbeke Corp.*, 304 F.3d at 220 ("[The Court's] inquiry under § 10(a)(4) . . . focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.") (internal quotation and citation omitted).

Respondents cite *Stolt-Nielsen S.A. v. Animal Feeds International Corp.*, 559 U.S. 662 (2010), for the proposition that an arbitration panel may not "proceed[] as if it had the authority of a common-law court," *id*. at 673–74, and exceeds its powers where it "simply impos[es] its own conception of sound policy . . . ." *Id*. at 671–77. They thus fault the Tribunal for reasoning from the language and holdings of the Delaware courts as to how those courts would address the dispute between the parties. But the FAA does not prevent arbitral panels from engaging in legal reasoning or applying familiar common law methods in determining how a dispute should be treated under the law that addresses it. That is the essence of a decision under law. *Stolt-Nielsen* involved an entirely different type of question—whether certain claims (namely, class claims) were arbitrable at all under the relevant agreement. Here, Respondents make no argument at all that the Tribunal did not have the power, under the SPA, to adjudicate Petitioners' fraudulent

inducement claims.  Rather, Respondents' Section 10(a)(4) arguments merely reiterate the arguments they raise to establish manifest disregard.

The Second Circuit has noted ambiguity as to whether manifest disregard constitutes an additional ground for vacatur of an arbitration award separate and apart from the standards provided under Section 10(a).  *See Weiss v. Sallie Mae, Inc.*, 939 F.3d 105, 109 (2d Cir. 2019) ("In light of recent Supreme Court precedent, it is somewhat unclear whether the 'manifest disregard' paradigm constitutes an independent framework for judicial review, as the district court thought, or a 'judicial gloss' on the FAA's enumerated grounds in section 10(a).") (citing *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 451–52 (2d Cir. 2011)).  This distinction is not important to the Court's ruling.  If a claim that the Tribunal erred in applying Delaware law is cognizable under Section 10(a)(4), it fails for the same reasons that Respondents' manifest disregard claim fails.

Finally, Respondents argue that the Panel exceeded its power by failing to apply the SPA's €2,000,000 indemnity threshold and by failing to deduct from the €100,000,000 indemnity award claims that the parties have previously settled.  *See* Dkt. No. 11 at 23–24.  This argument fails for the same reason Respondents' other Section 10(a)(4) arguments fail: they contend not that the Panel lacked the power to arbitrate the issue, but only that the panel reached the wrong result.  As stated previously, it is well-established that this is not the proper inquiry under Section 10(a)(4).  *See Jock*, 942 F.3d at 622; *Westerbeke Corp.*, 304 F.3d at 220.  Respondents cite no case to the contrary.  Their argument for modification of the Award is rejected.

**CONCLUSION**

For the foregoing reasons, the Petition to Confirm the Arbitration Award, at Dkt. No. 1, is GRANTED. Respondents' Motion to Vacate and Modify the Arbitration Award, at Dkt. No. 10, is DENIED with prejudice. The Clerk of Court is respectfully directed to close the case.

SO ORDERED.

Dated: July 15, 2020
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge